**2211-CC01009**

Electronically Filed - St Charles Circuit Div - November 04, 2022 - 02:30 PM

## IN THE ST. CHARLES COUNTY CIRCUIT COURT
## STATE OF MISSOURI

Joshua Bell,

                    Plaintiff,

      - against -

Annie's, Inc.,

               Defendant

Jury Trial Demanded

SERVE DEFENDANT AT:
1610 Fifth Street, Berkeley, CA 94710

Plaintiff, by attorneys, alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.    Annie's, Inc. ("Defendant") manufactures, packages, distributes, markets, labels and sells Bunny Fruit Snacks – Tropical Treats fruit snack pouches under their Annie's Homegrown brand ("Product").

2.    The average consumer spends a mere 13 seconds making an in-store purchasing decision, or between 10 to 19 seconds for an online purchase.

3.    Faced with a large box and a smaller box, both with the same amount of product inside, consumers will choose the larger box because they think it is a better value.

4.    Defendant misleads and shortchanges consumers by falsely and deceptively misrepresenting the quantity of fruit snacks contained in each box of Product.

5.    Most studies show that 75 to 80 percent of average consumers do not look at any label information, no less the net weight, while they may look at the nutritional information.

6.    In other words, consumers are most likely not going to convert a net weight mentally to visualize how much product they are getting, but instead base their decision on the product's packaging and size.

Electronically Filed - St Charles Circuit Div - November 04, 2022 - 02:30 PM

7.     Though a reasonable consumer does not expect the food package to be bursting at the seams, he or she does expect there to be an amount of product in the box that bears a reasonable relationship to the size of the package.

8.     Slack fill is the difference between the actual capacity of a container and the volume of product contained therein.

9.     Nonfunctional slack fill is the empty space in a package that is filled to less than its capacity for reasons which are illegitimate or unlawful.

10.     Plaintiff, like all reasonable consumers, prior to the point of sale, could not and did not reasonably understand or expect any of the net weight or serving disclosures to translate to a quantity of fruit snack meaningfully different from their expectation of a quantity which would fill up the box.

11.     Only upon opening their respective boxes did Plaintiff and consumers discover to their shock and disappointment that it was less than half-full, while over half of the boxes constituted slack fill, virtually all of which was nonfunctional.

12.     Defendant intentionally packages the Product in opaque cardboard containers that are constructed in such a way that does not allow for a visual or audial confirmation of the contents of the Product.

13.     The product package is made of heavy cardboard and the exterior dimensions are: 7 inches (height) by 4.5 inches (length) and 1.5 inches (width).

Electronically Filed - St Charles Circuit Div - November 04, 2022 - 02:30 PM



14.     The size of the box in and of itself is a representation by Defendant as to the amount of fruit snacks contained in the box.

15.     Inside the cardboard package are 5 small flexible pouches each containing 0.8 oz/23g of product, for a total net product weight of 4 oz (115g).



16.     Disclosures of net weight and serving sizes in a measurement of ounces or grams does not allow the reasonable consumer to make any meaningful conclusion about the quantity of fruit snacks contained in the Product's boxes that would be different from the reasonable consumer's expectation that the quantity of fruit snacks is commensurate with the size of the box.

Electronically Filed - St Charles Circuit Div - November 04, 2022 - 02:30 PM

17.   Even if the consumers could view the inside of the package, they would only see five secondary packages, not knowing the amount of edible product in each package.



18.   The secondary packages were themselves only about 50% full of edible product.



19.   Based on the level of fill of the fruit snacks removed from secondary packaging, there is almost 79 percent slack fill, as shown by the fill to 1.5 inches based on 7-inch height (21.4 percent).

Electronically Filed - St Charles Circuit Div - November 04, 2022 - 02:30 PM

 

20.    When separated, the Product's content appears as shown in the image below.

 

21.    The sole purpose of the secondary packaging (the pouches) is to "bulk up" the interior of the cardboard adding to the deception that there is more product in the cardboard container than there is.

22.    Consumers cannot know the weight of the individual fruit snacks in advance, such

Electronically Filed - St Charles Circuit Div - November 04, 2022 - 02:30 PM

that they would be put on notice about the small amount of product they will receive.

23.    The Product cannot be shaken or otherwise manipulated to determine the amount of edible product contained in the package because the individual fruit snack pieces are within secondary packaging and congealed together therein, such that there will be little if any noticeable sound revealing the paucity of Product.

24.    21 C.F.R. § 100.100 ("Misleading containers.") provides that "a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading."

25.    If a container contains non-functional slack fill, it is misleading if a consumer is unable to fully view the contents of the container.

26.    Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons which fall outside of these "safe harbors."

27.    There are acceptable and legitimate reasons for a product containing slack-fill – "safe harbors." 21 C.F.R. § 100.100(a)(1)-(6) ("Safe Harbors").

28.    None of these safe harbors apply.

29.    First, the contents of the container do not require the packaging to protect it from damage since the contents are not at risk of breakage. See 21 C.F.R. § 100.100(a)(1) ("Protection of the contents of the package").

30.    The contents are packets of gelatinous fruit pieces, which cannot break or be damaged.

31.    The product is not fragile or "delicate" such that outer packaging and secondary packaging in the sizes used are necessary.

32.    Second, there are no requirements of the machines used to enclose the contents that would leave this large amount of empty space. See 21 C.F.R. § 100.100(a)(2) ("The requirements

Electronically Filed - St Charles Circuit Div - November 04, 2022 - 02:30 PM

of the machines used for enclosing the contents in such package").

33.    The machines can be adjusted to use less cardboard to form the outer box and/or additional secondary packaging units can be added, reducing the empty space as shown below.

34.    Third, no issue exists with respect to the contents of the container – including the SPUs and the product contained within – settling during shipping and handling. *See* 21 C.F.R. § 100.100(3) ("Unavoidable product settling during shipping and handling")

35.    This is because the fruit snacks are of high density and naturally stick together due to their inherent stickiness, as shown in the image below.



36.    No additional product settling occurs during subsequent shipping and handling.

37.    The SPUs are filled in the outer box and immediately come to rest at the bottom of the outer box and are not otherwise suspended at a higher level in the box only to fall to the bottom during settling and handling.

Electronically Filed - St Charles Circuit Div - November 04, 2022 - 02:30 PM



38.    Based on the level of fill of the SPUs, the empty space constitutes over sixty (60) percent of the packaging, based on height of 17.8 centimeters with the SPUs taking up 7.1 cm.[1]

 

---

[1] 7.1 divided by 17.8 is 39.8 percent, and the empty space is 60.2 percent.

Electronically Filed - St Charles Circuit Div - November 04, 2022 - 02:30 PM

39.     Though there *may* be a need for the secondary packaging to perform a specific function inherent to the nature of the food – distribution and consumption of the product in set amounts capable of being transported – in a lunchbox, purse, pockets, etc. – this safe harbor is not intended to provide for containers with over half of the box empty. *See* 21 C.F.R. § 100.100(4).

40.     There is no reason the SPUs cannot be sold in smaller boxes or more of them added to the present box.

41.     The outer cardboard box and secondary packaging units are not considered to be "reusable containers" and are not part of the presentation of the food and do not have value in proportion to the value of the product and independent of its function to hold the food. *See* 21 C.F.R. § 100.100(5).

42.     The outer box and secondary packaging are discarded after consumed.

43.     No inability exists to increase the level of fill or to reduce the size of the package to some minimum package size necessary to accommodate required food labeling or perform another purpose. *See* 21 C.F.R. § 100.100(6).

44.     In fact, it is just as easy to design a smaller cardboard box, which would still be capable of holding the secondary packaging units and displaying all required labeling information.

45.     Defendant can easily increase the quantity of fruit snacks contained in each Product container or, alternatively, decrease the size of the containers or change the label in a way that eliminates the deception such as, for example, adding a fill line, transparent window, or actual size depiction accompanied by the words "actual size."

46.     There is no need for a tamper resistant device, as the Product is currently sold without such a device.

47.     Therefore, the presence of a tamper resistant device cannot be said to be a barrier to

Electronically Filed - St Charles Circuit Div - November 04, 2022 - 02:30 PM

reducing the size of the outer box.

48.    Because the package does not allow consumers to fully view its contents, and contains nonfunctional slack-fill, the packaging misleading to consumers.

49.    Defendant intentionally designed the packaging to deceive Plaintiff and the class members.

50.    The Product's packaging size was a material factor in Plaintiff's and consumers' decision to purchase the Products.

51.    Plaintiff and class members expected to receive more Product than was being sold due to the Product's deceptive size and/or packaging.

52.     As a result of Defendant's packaging, consumers purchased the Product and have been damaged.

53.    Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud Plaintiff and consumers.

54.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

55.    The value of the Product that Plaintiff purchased and consumed was materially less than its value as represented by Defendant.

56.    Had Plaintiff and class members known the truth, they would not have bought the Product or would have paid less for them.

57.    As a result of the false and misleading labeling, the Product is an sold at a premium price, approximately no less than $4.89 per 32 OZ, excluding tax, compared to other similar products represented in a non-misleading way, and higher than it would be sold for absent the excessively large and underfilled box.

Electronically Filed - St Charles Circuit Div - November 04, 2022 - 02:30 PM

<u>Parties, Jurisdiction & Venue</u>

58.    Plaintiff Joshua Bell is a citizen of Missouri, and resides in this judicial circuit.

59.    Defendant Annie's, Inc., is a Delaware corporation with a principal place of business in California, at 1610 5th Street, Berkeley, CA 94710.

60.    The members of the class or classes Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here for several years, in thousands of stores and online, across the States covered by Plaintiff's proposed classes.

61.    The Product is available to consumers from grocery stores, big box stores, warehouse club stores, convenience stores, and online.

62.    Venue is appropriate in this Court because a substantial part of the events or omissions giving rise to the claims occurred here, including Plaintiff's purchase, transactions and/or use of the Product and awareness and/or experiences of and with the issues described here.

63.    Plaintiff purchased the Product at locations including Walmart Supercenter 1190 St. Charles Rock Rd., Bridgeton, Missouri, 63044, between October 22, 2022 through October 25, 2022, among other times.

64.    Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, and/or images on the Product, on the labeling, statements, omissions, claims, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

65.    Plaintiff viewed the container and expected it would contain more of the fruit snacks than it did and that the contents would be greater than they were.

66.    Plaintiff was disappointed when he opened the box and saw the box was mostly empty, and that the fruit snacks did not even fill half the box.

Electronically Filed - St Charles Circuit Div - November 04, 2022 - 02:30 PM

67.   Plaintiff bought the Product at or exceeding the above-referenced price.

68.   Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

69.   Plaintiff would not have purchased the Product if he knew the box would be mostly empty or would have paid less for it.

70.   The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's use of an excessively large box.

71.   Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance its representations are consistent with its attributes and/or composition.

72.   Plaintiff is unable to rely on the labeling and representations not only of this Product, but other similar products raising identical issues, because he is unsure whether those representations are truthful.

<u>Class Allegations</u>

73.   Plaintiff seeks certification under <u>Fed. R. Civ. P. 23</u> of the following classes:

> **Missouri Class:** All persons in the State of Missouri who purchased the Product during the statutes of limitations for each cause of action alleged; and a
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Missouri, Illinois, Maryland, Hawaii, New York, Washington D.C., Rhode Island, Vermont, Washington, and Connecticut who purchased the Product during the statutes of limitations for each cause of action alleged.

74.   Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

Electronically Filed - St Charles Circuit Div - November 04, 2022 - 02:30 PM

75.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

76.   Plaintiff is an adequate representative because his interests do not conflict with other members.

77.   No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

78.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

79.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

80.   Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Missouri Merchandising Practices Act ("MMPA"),</u>
<u>Mo. Rev. Stat. § 407.010, *et seq.*</u>

81.   Plaintiff incorporates by reference all preceding paragraphs.

82.   Plaintiff purchased the Product for his own, personal use.

83.   Plaintiff and all members of the proposed class are "persons" and the Products are "merchandise" as those terms are defined under the MMPA.

84.   Defendant designed the box so consumers like Plaintiff would expect that it contained more product than it did.

85.   The net weight, serving size and opaque boxes fail to tell consumers how much of actual product is contained therein.

86.   Plaintiff relied on the size of the box to expect it would contain more actual product than it did.

87.   Plaintiff would not have purchased the Product or paid as much if the true facts had

Electronically Filed - St Charles Circuit Div - November 04, 2022 - 02:30 PM

been known, suffering damages.

Violation of State Consumer Fraud Acts
(Consumer Fraud Multi-State Class)

88.    The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are
similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or
deceptive business practices in the conduct of commerce.

89.    The members of the Consumer Fraud Multi-State Class reserve their rights to assert
their consumer protection claims under the Consumer Fraud Acts of the States they represent
and/or the consumer protection statute invoked by Plaintiff.

90.    The members of the Consumer Fraud Multi-State Class were misled similarly to
Plaintiff with respect to their expectations the Product would contain more product than it did.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

91.    The Product was manufactured, identified, and sold by Defendant and expressly and
impliedly warranted to Plaintiff and class members that it contained an amount of fruit snacks that
had a reasonable relationship to the packaging in which they were presented.

92.    Defendant directly marketed the Product to Plaintiff through its advertisements and
marketing, through various forms of media, on the packaging, in print circulars, direct mail,
distributed product descriptions, and targeted digital advertising.

93.    Defendant knew the product attributes that potential customers like Plaintiff were
seeking and developed its marketing and labeling to directly meet those needs and desires.

94.    Defendant's representations about the Product were conveyed in writing and
promised it would be defect-free, and Plaintiff understood this meant the Product contained an
amount of fruit snacks that had a reasonable relationship to the packaging in which they were

Electronically Filed - St Charles Circuit Div - November 04, 2022 - 02:30 PM

presented.

95.    Defendant's representations affirmed and promised that the Product contained an amount of fruit snacks that had a reasonable relationship to the packaging in which they were presented.

96.    Defendant described the Product as one which contained an amount of fruit snacks that had a reasonable relationship to the packaging in which they were presented, which became part of the basis of the bargain that the Product would conform to its affirmation and promise.

97.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

98.    This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company known for its high-quality products, transparent labeling, and a commitment to putting customers first.

99.    The front label net weight of the outer box and secondary packaging units fails to tell consumers how much of actual product is contained therein.

100.   Plaintiff recently became aware of Defendant's breach of the Product's warranties.

101.   Plaintiff has provided written notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express and implied warranties, specifically sending, on or before October 25, 2022, a Notice Letter to Defendant at its business address, set forth *supra*.

102.   Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, industry bodies, competitors, and consumers, to its main offices, and by consumers through online forums.

103.   The Product did not conform to its affirmations of fact and promises due to

Electronically Filed - St Charles Circuit Div - November 04, 2022 - 02:30 PM

Defendant's actions.

104.   The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it contained an amount of fruit snacks that had a reasonable relationship to the packaging in which they were presented.

105.   The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it contained an amount of fruit snacks that had a reasonable relationship to the packaging in which they were presented, and he relied on Defendant's skill or judgment to select or furnish such a suitable product

<u>Negligent Misrepresentation</u>

106.   The front label net weight of the outer box and secondary packaging units fails to tell consumers how much of actual product is contained therein.

107.   Defendant had a duty to truthfully represent the Product, which it breached.

108.   This duty was non-delegable, based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted company known for its high-quality products.

109.   Defendant's representations regarding the Product went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency, and putting customers first, that it has been known for.

110.   These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

Electronically Filed - St Charles Circuit Div - November 04, 2022 - 02:30 PM

111.   The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

112.   Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, her purchase of the Product.

<u>Fraud</u>

113.   Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained an amount of fruit snacks that had a reasonable relationship to the packaging in which they were presented.

114.   The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

115.   Defendant knew of the extra space in the boxes from previous complaints to its main office and declined to change the box size or add more SPUs.

<u>Unjust Enrichment</u>

116.   Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

  **WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3.  Awarding monetary damages, including statutory and/or punitive damages and interest pursuant to statutory and common law claims;

4.  Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

5.  Other and further relief as the Court deems just and proper.

Dated:   November 4, 2022

Respectfully submitted,

/s/ Daniel F. Harvath
Harvath Law Group, LLC
75 W Lockwood Ave Ste 1
Webster Groves MO 63119
(314) 550-3717
dharvath@harvathlawgroup.com

Sheehan & Associates, P.C.
Spencer Sheehan (*Pro Hac Vice* forthcoming)
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

Electronically Filed - St Charles Circuit Div - November 04, 2022 - 02:30 PM