**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| JOSHUA BELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )    Case No. 4:22-cv-01367-MTS |
| | ) |
| ANNIE'S, INC., | ) |
| | ) |
| Defendant. | ) |

<u>**MEMORANDUM AND ORDER**</u>

This matter is before the Court on the Motion to Dismiss filed by Defendant, Annie's,

Inc. ("Defendant"), Doc. [11], which seeks the dismissal with prejudice of Plaintiff Joshua Bell's

Complaint, Doc. [5].  Plaintiff filed this putative class action in the Circuit Court of St. Charles

County alleging a violation of the Missouri Merchandising Practices Act along with other

Missouri statutory and common law claims.[1]  Doc. [1-1].  Defendant removed the action to this

Court based upon diversity jurisdiction under 28 U.S.C. § 1332(d).  Doc. [1] ¶ 6.  Defendant

argues the action should be dismissed for several reasons.  For the reasons discussed herein, the

Court will grant Defendant's Motion and dismiss this action.

**I.      BACKGROUND**

Defendant manufactures, packages, distributes, and sells organic Tropical Treat Bunny

Fruit Snacks (the "fruit snacks").  Defendant packages and sells them in an opaque, "heavy

cardboard" box with a height of 7 inches, a length of 4.5 inches, and a width of 1.5 inches.  Doc.

[5] ¶ 13.  Within the box, the fruit snacks are packaged individually in five separate pouches.

---

[1] Plaintiff also purports to bring claims for the "Violation of State Consumer Fraud Acts" on behalf of the "Consumer Fraud Multi-State Class," which contains persons in the states of Connecticut, Hawaii, Illinois, Maryland, New York, Rhode Island, Vermont, and Washington, along with the District of Columbia.  Doc. [5] ¶¶ 73, 88–90.

Plaintiff alleges that the five pouches within the box leave about sixty percent (60%) of the box as empty space, or nonfunctional slack fill, as Plaintiff calls it.  *Id.* ¶¶ 9, 38.  He further alleges that, if one removed all the fruit snacks from the five individual pouches and then put the loose fruit snacks back in the box, almost seventy-nine percent (79%) of the box would be empty space.  *Id.* ¶ 19.

But the box makes no secret of its contents.  The front and back of the box state plainly in a clear and conspicuous font that it contains "5 – 0.8 OZ (23g) POUCHES."  *Id.* at 3; *accord* Doc. [12-1].[2]  Similarly, both the front and back of the box state that its contents have a "NET WT" of "4 OZ (115g)."  Doc. [5] at 3; *accord* Doc. [12-1].  One of the side panels of the box also contains the familiar "Nutrition Facts" label that plainly states there are "5 servings per container" and that the "Serving size" is "1 Pouch (23g)."  Doc. [12-1]; *see also* 21 C.F.R. § 101.9(d)(3).

Plaintiff, Joshua Bell, purchased the fruit snacks at a Walmart Supercenter in Bridgeton, Missouri between October 22, 2022, and October 25, 2022.  Doc. [5] ¶ 63.  After he purchased the fruit snacks and opened the box, he alleges that, to his "shock and disappointment," the box was "less than half-full."  *Id.* ¶ 11.  He alleges that he did not "understand or expect" that the information on the box about its "net weight or serving disclosures" would "translate to a quantity of fruit snack meaningfully different from [his] expectation of a quantity [that] would fill up the box," though he does not quantify that expectation.  *Id.* ¶ 10.  The "packaging size was a material factor," he says, in his decision to purchase the fruit snacks, *id.* ¶ 50, and he "expected

---

[2] Plaintiff's Complaint quotes from and provides images of portions of the product's box.  In response to the Motion to Dismiss, Defendant provided a copy of the entire box.  Doc. [12-1].  Plaintiff does not object to the use of the exhibit, see Doc. [18] at 1 n.1, and the Court concludes it may use it in deciding this Motion.  *See Thompson v. Allergan USA, Inc.*, 993 F. Supp. 2d 1007, 1011 (E.D. Mo. 2014).

to receive more" due to the "size and/or packaging," *id.* ¶ 51.  The Plaintiff claims he "would not

have bought," or would have "paid less" for, the fruit snacks had he "known the truth."  *Id.* ¶ 56.

As a result, and only days after his purchase,[3] Plaintiff filed this action against Defendant

alleging a violation of the MMPA.  *Id.* ¶¶ 81–87.  In addition, Plaintiff brought claims for a

breach of express warranty, the implied warranty of merchantability, and the Magnuson-Moss

Warranty Act, along with claims for negligent misrepresentation, fraud, and unjust enrichment.

*Id.* ¶¶ 88–116.  Plaintiff also seeks to bring his claims on behalf of two putative classes, the first

including persons from just Missouri, and the second including persons from Missouri and

several other states and Washington D.C.  *Id.*  ¶¶ 73, 88; *see also supra* n.1.

## II.       LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Under Federal Rule of Civil Procedure

12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can

be granted."  The purpose of such a motion is to test the legal sufficiency of a complaint.  When

considering a Rule 12(b)(6) motion, the Court assumes a complaint's factual allegations are true

and makes all reasonable inferences in favor of the nonmoving party, but the Court "need not

accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts."

*Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).  To survive a motion to

---

[3] Quite remarkable is the haste with which Plaintiff brought this action.  He alleges he purchased the fruit snacks starting Saturday, October 22, 2022.  Doc. [5] ¶ 63.  Then, "on or before" Tuesday, October 25, 2022, Plaintiff's counsel sent a Notice Letter to Defendant regarding the product's "express and implied warranties."  *Id.* ¶ 101.  The following week, on Friday, November 04, 2022, Plaintiff filed this putative class action.  Plaintiff's readiness raises an important issue—or at least the appearance of one.  *See In re Bisphenol-A (BPA) Polycarbonate Plastic Prod. Liab. Litig.*, 4:08-md-001967-NKL, 2011 WL 6740338, at *1 (W.D. Mo. Dec. 22, 2011) (explaining that individuals who knew about an allegedly unfair practice before purchasing a product "have no injury"); *see also Strow v. B&G Foods, Inc.*, 1:21-cv-05104 (Oct. 24, 2022, N.D. Ill.) (ordering the plaintiff's counsel to file a statement addressing whether the plaintiff was "recruited" and "not actually injured").  But because the Court finds Plaintiff's claims fail on their merits in other ways, the Court does not address this issue any further.

dismiss, the complaint must allege facts supporting each element of the plaintiff's claims, and the claims cannot rest on mere speculation.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The complaint "must allege more than '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements'" and instead must "allege sufficient facts that, taken as true, 'state a claim to relief that is plausible on its face.'"  *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1057 (8th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The plausibility of a complaint turns on whether the facts alleged allow a court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Lustgraaf v. Behrens*, 619 F.3d 867, 873 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

III.     DISCUSSION

a.  **MMPA**

To establish a violation of the Missouri Merchandising Practices Act (MMPA), Missouri law long has required a plaintiff to establish that he (1) purchased merchandise from the defendant; (2) for personal, family, or household purposes; and that he (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful under the Merchandising Practices Act.  *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 773 (Mo. banc 2007)); *accord Schulte v. Conopco, Inc.*, 997 F.3d 823, 825–26 (8th Cir. 2021).

In this case, where the claim accrued after August 28, 2020, Plaintiff *also* must establish (a) that he acted as a reasonable consumer would in light of all circumstances; (b) that the method, act, or practice declared unlawful would cause a reasonable person to enter into the transaction that resulted in damages; and (c) individual damages with sufficiently definitive and objective evidence to allow the loss to be calculated with a reasonable degree of certainty. *See* Act of July 01, 2020, 2020 Mo. Laws 763, 765 (codified as amended at Mo. Rev. Stat. § 407.025.1); *see also* 34 Robert H. Dierker & Richard J. Mehan, *Mo. Practice Series: Personal Injury & Torts Handbook* § 29:2 (2022 ed.) (explaining § 407.025.1 "now requires pleading and pro[ving]" these additional requirements); *compare* Mo. Approved Jury Instr. (Civil) 39.01 (8th ed.) (providing instructions "where S.B. 591 (Laws 2020) does not apply"), *with id.* at 39.02 (providing instructions "where S.B. 591 (Laws 2020) applies").

Here, assuming without deciding that Plaintiff has plausibly alleged an unlawful method, act, or practice in the package design through the allegedly nonfunctional slack fill,[4] the Court concludes that Plaintiff has *not* plausibly alleged he acted as a reasonable consumer would in light of all circumstances. The Complaint lacks any plausible explanation as to why a reasonable consumer would not understand that the box, which stated three times that it contained five pouches of fruit snacks and two times that they weighed a total of four ounces, meant exactly what it said. Regardless of why this Plaintiff did not understand the elementary statements explaining the box's contents, the Court concludes a reasonable consumer—one using "that degree of care that an ordinarily careful person would use under the same or similar

---

[4] *See, e.g.*, *Hawkins v. Nestle USA Inc.*, 309 F. Supp. 3d 696 (E.D. Mo. 2018) (concluding, pre-2020 MMPA amendment, that the plaintiff plausibly alleged an unlawful practice where he alleged "45% non-functional, slack-filled space" in a candy box); *White v. Just Born, Inc.*, 2:17-cv-04025-NKL, 2017 WL 3130333 (W.D. Mo. July 21, 2017) (similar). This Court notes, however, that it has been unable to locate, and the parties did not cite, any case from the Missouri Court of Appeals or the Supreme Court of Missouri—before or after the 2020 MMPA amendment—holding that the inclusion of nonfunctional slack-filled space is an unlawful practice, or otherwise violates the MMPA, when the product's label accurately describes its contents.

circumstances"—would see the statements and understand them. *See* Mo. Approved Jury Instr. (Civil) 11.05 (8th ed.).[5]

Reasonable consumers do not meticulously examine every front label "to parse them as lawyers might for ambiguities." *See Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 476 (7th Cir. 2020). But reasonable consumers do review product labels and packaging. *See, e.g.*, *Savalli v. Gerber Prods. Co.*, 0:15-cv-61554-WJZ, 2016 WL 5390223, at *1 (S.D. Fla. Sept. 20, 2016) ("[T]o understand what they are purchasing, reasonable consumers should—well, read the label."); *see also* Richard A. Merrill & Earl M. Collier, Jr., *"Like Mother Used to Make": An Analysis of FDA Food Standards of Identity*, 74 Colum. L. Rev. 561, 596 (1974) ("If adequate label information were supplied, it seems reasonable to expect that consumers would read it; at least it is not evident why the cost of reading available information should be considered excessive."). The Court rejects Plaintiff's conclusory allegations in the Complaint that "average consumers do not look at any label information," Doc. [5] ¶ 5; *accord id.* ¶ 2 (claiming the "average consumer spends a mere 13 seconds making an in-store purchasing decision"). *See Glick*, 944 F.3d at 717 (explaining courts "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts").

Missouri law recognizes that reasonable consumers do review product labels. In the failure to warn context, for example, a plaintiff unaware of a product's danger enjoys the presumption that he or she would have read and heeded a warning on a product if one had been

---

[5] As discussed, the MMPA now requires a plaintiff to demonstrate he or she "acted as a reasonable consumer would in light of all circumstances." Mo. Rev. Stat. § 407.025.1. Generally speaking, disagreement exists over the measure of a reasonable person. *See* Kevin P. Tobia, *How People Judge What Is Reasonable*, 70 Ala. L. Rev. 293, 299 (2018) ("A fundamental debate about reasonableness concerns whether it is a statistical or prescriptive standard."). The Missouri Approved Jury Instructions accounts for the MMPA's reasonableness requirement by adding that a jury must find that a plaintiff was acting "in the exercise of ordinary care." Mo. Approved Jury Instr. (Civil) 39.02 (8th ed.). And it defines "ordinary care" as "that degree of care that an ordinarily careful person would use under the same or similar circumstances." *Id.* at 11.05. Thus, the Court will analyze the statute through that standard. *See Syn, Inc. v. Beebe*, 200 S.W.3d 122, 128–29 (Mo. Ct. App. 2006) ("The law is well-settled that where an MAI instruction applies to the case, the use of such instruction is mandatory.").

provided.  *Tune v. Synergy Gas Corp.*, 883 S.W.2d 10, 14 (Mo. banc 1994).  And, in other

contexts, where individuals have the opportunity to read something but choose not to do so,

Missouri law generally does not excuse their failure.  *See Grossman v. Thoroughbred Ford, Inc.*,

297 S.W.3d 918, 922 (Mo. Ct. App. 2009) (explaining that "those who sign a contract have a

duty to read it and may not avoid the consequences of the agreement on the basis that they did

not know what they were signing"); *Anderson v. Ford Motor Co.*, 6:17-cv-03244-BP, 2020 WL

13538621, at *3 (W.D. Mo. Feb. 14, 2020) (rejecting the plaintiff's claim that because she did

not read a warranty prior to her purchase the warranty was "procedurally unconscionable" under

Missouri law).

Undeniably, the MMPA itself recognizes that reasonable consumers read product labels

and packaging.  A multitude of suits have alleged a violation of the MMPA based on claims and

representations printed on product labels and packages.  *See, e.g.*, *Brunts v. Hornell Brewing Co.*,

4:22-cv-00648-HEA, 2023 WL 355837, at *1 (E.D. Mo. Jan. 23, 2023) (suit alleging MMPA

violation where label stated product was "All Natural"); *Boone v. PepsiCo, Inc.*, 4:22-cv-00108-

AGF, 2023 WL 1070293, at *7 (E.D. Mo. Jan. 27, 2023) (suit alleging MMPA violation where

granola bars were labeled "No Artificial Preservatives"); *Dedloff v. Target*, 4:22-cv-00868-JAR

(E.D. Mo. Aug. 22, 2022) (suit alleging MMPA violation where label of cold medicine said it

was "non-Drowsy").  Still other MMPA cases are premised on a label's omissions.  *See, e.g.*,

*Mikhlin v. Johnson & Johnson*, 4:14-cv-00881-RLW, 2014 WL 6084004, at *1 (E.D. Mo. Nov.

13, 2014) (suit alleging MMPA violation where material facts regarding the product's alleged

risk of causing cancer were "concealed, suppressed, and/or omitted" on "product labels and

packages"); *Willard v. Bic Corp.*, 788 F. Supp. 1059, 1071 (W.D. Mo. 1991) (suit alleging

MMPA violation where material facts "regarding the dangerous and/or defective character" of

lighters were "concealed, suppressed or omitted" from the packaging).  These cases all are premised on the reality that consumers read these representations (or, in the case of the alleged omissions, would have read them).  If consumers did not read labels and packages, they would not be deceived by misleading claims on them or be deceived by an omission.  But because reasonable consumers *do* read labels and packages, therein lies the potential deception and unfairness in the aforementioned instances, and therein lies the substantial flaw in Plaintiff's case.

Here, the packaging at issue represented, in three separate places, that it contained five pouches of fruit snacks.  Plaintiff never alleges or makes any argument that those statements were difficult to read or view (*e.g.*, the font was too small, or the color scheme hid the text).  Nor does he assert that the statements themselves were difficult to comprehend or grasp (*e.g.*, the weight was provided in scruples, or the number of pouches was provided in Greek numerals).  The packaging here revealed its contents, three times, in easily understood conspicuous writings, which even went so far as to list the weight of each individual pouch and of the total product in both United States customary units and in metric units.[6]  With its contents conspicuously printed on the package three times, "it is impossible to view [it] without also reading the total number of [fruit snack pouches] contained in each package."  *Fermin v. Pfizer Inc.*, 215 F. Supp. 3d 209, 212 (E.D.N.Y. 2016).  "It defies logic to accept that the reasonable consumer would not rely upon the stated [pouch] count."  *Id.*; *accord Ebner v. Fresh, Inc.*, 838 F.3d 958, 967 (9th Cir. 2016) (affirming the grant of a motion to dismiss because the plaintiff could not plausibly allege

---

[6] *See* Mo. Dep't of Elementary & Secondary Educ., *MLS Math Expanded Expectations Grade 4*, https://dese.mo.gov/media/pdf/curr-math-mls%20expanded-expectaions-grade-4 (last visited May 18, 2023) (providing that Missouri fourth graders are expected to "know relative sizes of measurement units," including ounces and grams, and be able to "express measurements of a larger unit in terms of a smaller unit").

that the product's design and packaging were deceptive where "an accurate net weight label [wa]s affixed" to the product).

Even accepting Plaintiff's conclusion that the box contains nonfunctional slack fill—putting aside any "obvious alternative explanation[s]" for the empty space, see *Twombly*, 550 U.S. at 567—the box simply is not so large as to create any reasonable expectation that it certainly *must* contain more than five pouches of fruit snacks or more than four total ounces of fruit snacks.  With a height of 7 inches and a length of 4.5 inches the box's height and length are noticeably smaller than the paper on which this Memorandum and Order is printed.  So, while the Court assumes, as it must at this stage, that Plaintiff earnestly believed the box would contain more fruit snacks based on its size, that assumption was not reasonable.  *See Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) (explaining that something "does not become 'false and deceptive' merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed" (quoting *Lavie v. Procter & Gamble Co.*, 129 Cal. Rptr. 2d 486, 494 (Cal. Ct. App. 2003))).

Plaintiff alleges that he did not "understand or expect" that "any" information on the box about its "net weight or serving" size would "translate to a quantity of fruit snack meaningfully different from [his] expectation of a quantity [that] would fill up the box."  Doc. [5] ¶ 10.  But the Court concludes that the package's repeated statements that it contained five .8-ounce pouches—and had a net weight of four ounces—was more than enough to clear up any possible confusion of a reasonable consumer.  *See Dumont v. Reily Foods Co.*, 934 F.3d 35, 45 (1st Cir. 2019) (Lynch, J., dissenting) (opining that when a consumer is "confused" over the contents of a product, "the only reasonable thing" is for the consumer "to look at" the label); *In re 100%*

- 9 -

*Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*, 275 F. Supp. 3d 910, 922 (N.D. Ill. 2017) (finding that "debatable" assumptions are "unreasonabl[e]" if a simple review of the package "would set them straight"); *see also, e.g.*, *Hardy v. Ole Mexican Foods, Inc.*, 616 F. Supp. 3d 247, 252 (W.D.N.Y. 2022) (finding that, despite tortilla package's Spanish phrases, references to the Mexican flag, and the phrase "A Taste of Mexico!" on the front of the packaging, "a reasonable consumer, acting reasonably under the circumstances, would not be misled as to where the tortillas were manufactured" when the back of the package clearly stated they were "MADE IN U.S.A.").

Applying the general principles discussed above to the facts of this case, the Court concludes that Plaintiff has not plausibly alleged that he was acting as a reasonable consumer would in light of all the circumstances.  This Court, however, is not the first to reach this conclusion when examining this identical product.  In *Klausner v. Annie's, Inc.*, the United States District Court for the Southern District of New York dismissed a different plaintiff's claims arising under the New York General Business Law ("NYGBL") and other New York common law and statutory provisions where the plaintiff alleged Annie's, Inc.'s organic Tropical Treat Bunny Fruit Snacks contained "'non-functional slack-fill' (i.e., unnecessary empty space) and therefore mislead consumers as to the amount of Fruit Snacks contained therein."  581 F. Supp. 3d 538, 543 (S.D.N.Y. 2022).  The *Klausner* court determined, "as a matter of law," that because of "the prominence" of the "large, color-differentiated font," indicating "the actual amount" of fruit snacks in each box, "the allegedly nonfunctional slack-fill would not mislead a reasonable consumer acting reasonably under the circumstances."  *Id.* at 548 (internal quotations omitted).  Accordingly, the court concluded the plaintiff's claims under the NYGBL failed since the plaintiff did not establish that the packaging was "materially misleading."  *Id.*

While this Court is mindful the *Klausner* court was applying New York law, this Court reaches the same conclusion applying Missouri law.  The subsections of the NYGBL at issue in *Klausner* require a finding "that a reasonable consumer in like circumstances would consider the misrepresentation material."  *Id.* (quoting *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 189–90 (E.D.N.Y. 2018)) (emphasis omitted).  This standard is in accord with the MMPA as amended, which now requires a plaintiff to establish that he or she "acted as a reasonable consumer would in light of all circumstances."  Mo. Rev. Stat. § 407.025.1.  Like the *Klausner* court, this Court finds that Plaintiff has not plausibly alleged that a "reasonable consumer would be materially misled by the Fruit Snacks' packaging."  581 F. Supp. 3d at 548 n.4.

Plaintiff argues that Missouri courts "consistently state[]" that "'whether a practice is "unfair" or "deceptive" are questions of fact.'"  Doc. [18] at 3 (quoting *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 312 (Mo. Ct. App. 2016)).  Putting aside, for a moment, that Plaintiff grounds that assertion in pre-2020 MMPA amendment cases, that assertion "does not override the plausibility pleading standard."  *Schulte*, 997 F.3d at 826; *accord Song v. Champion Petfoods USA, Inc.*, 27 F.4th 1339, 1344 (8th Cir. 2022) (applying Minnesota substantive law but concluding it was "simply not plausible" that a reasonable consumer "would read the phrase 'biologically appropriate' on a dog-food package" to represent that the defendant "eliminated all traces of heavy metals from the dog food").  The MMPA always has left it "to the court in each particular instance" to determine "whether fair dealing has been violated."  *Schulte*, 997 F.3d at 823 (quoting *Huch v. Charter Commc'ns, Inc.*, 290 S.W.3d 721, 724 (Mo. banc 2009)).  Under Missouri law, it has long been the case that when there is "no evidence of a course of conduct . . . that would amount to fraud or deception," MMPA complaints can be dismissed.  *Id.* (quoting *Kiechle v. Drago*, 694 S.W.2d 292, 294 (Mo. Ct. App. 1985)).  That conclusion is even more

certain today.  In the 2020 amendment to the MMPA, the Missouri General Assembly explicitly

added that "[a] court may dismiss a claim as a matter of law where the claim fails to show a

likelihood that the method, act, or practice alleged to be unlawful would mislead a reasonable

consumer."  *See* Act of July 01, 2020, 2020 Mo. Laws 763, 765 (codified as amended at Mo.

Rev. Stat. § 407.025).  Such is the case here.[7]

For these reasons, the Court will dismiss Plaintiff's MMPA claim.[8]

b. **Breaches of Warranty**

The heading in Plaintiff's Complaint for his next claim is "Breaches of Express

Warranty, Implied Warranty of Merchantability/Fitness for a Particular Purpose and Magnuson

Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*"  Taking them in turn, the Court concludes

Plaintiff has failed to state a claim for each warranty theory.

Under Missouri law, an express warranty is created by an "affirmation of fact or promise

made by the seller to the buyer which relates to the goods and becomes part of the basis of the

bargain" and warrants that "the goods shall conform to the affirmation or promise."  Mo. Rev.

Stat. § 400.2-313.  Plaintiff argues that the size of the box was an affirmation of fact or promise

that there would be an amount of fruit snacks in the box that bears a reasonable relationship to

the size of the box.  Doc. [18] at 13.

It is unclear to the Court how the mere size of a box could be an *express* affirmation or

promise.  *See Express*, *Black's Law Dictionary* (11th ed. 2019) ("Clearly and unmistakably

---

[7] While the plausibility pleading standard still governs here, the General Assembly's addition to the MMPA takes the wind out of Plaintiff's argument, and out of the cases on which that argument relies, that this issue should not be decided on a motion to dismiss.  *See* Jennifer J. Artman & Cary Silverman, *Two Years Since MMPA Reform: How Has It Changed Missouri Consumer Litigation?*, 78 J. Mo. B. 173, 175 (2022) (discussing the "now-repudiated holding" of *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308 (Mo. Ct. App. 2016)).

[8] The Court also will dismiss Plaintiff's claims under the other states' "Consumer Fraud Acts."  *See* Doc. [5] ¶¶ 88–90.  Plaintiff has provided no analysis on how he has stated a claim for these other states' laws.  Since he asserts "the consumer protection statutes of the Multi-State class are similar to the MMPA," and his MMPA claim fails, the Court will assume these other claims also fail.  Doc. [18] at 12.

communicated; stated with directness and clarity."); *see also Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 525 (1992) ("A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty.  Accordingly, the requirements imposed by an express warranty claim are . . . imposed by the warrantor." (internal quotations and alterations omitted)).  It is farcical to suggest that a 7 inch by 4.5 inch by 1.5 inch box, which expressly stated it contained only five pouches of fruit snacks totaling four ounces, created a warranty term, an affirmation or promise, that, by the size of the box alone, it actually contained more fruit snacks than it expressly stated it contained.

Plaintiff's implied warranty claim fairs no better.  Under Missouri law, a warranty that the goods are "merchantable" is "implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  Mo. Rev. Stat. § 400.2-314.  To be "merchantable" goods must, among other things, "pass without objection in the trade under the contract description." *Id.*  Plaintiff argues the fruit snacks at issue here could not do so because they were "marketed as if [they] contained an amount of fruit snacks that had a reasonable relationship to [their] packaging."  Doc. [18] at 13; *accord* Doc. [5] ¶ 91.  The Court concludes that, even assuming the amount of fruit snacks did not have a "reasonable relationship" to the packaging, there are no allegations that plausibly allege the fruit snacks were marketed in a way suggesting they contained more fruit snacks than they actually contained.  The very packaging with which Plaintiff takes issue stated, three times, that it had five pouches of fruit snacks, and it stated, three times, the weight of the fruit snacks in each pouch.

Lastly on the warranty claims, Plaintiff's Complaint cites the Magnuson-Moss Warranty Act, which "grants the holder of a warranty a federal cause of action for a breach of warranty under the applicable state law." *Hays v. Nissan N. Am. Inc.*, 297 F. Supp. 3d 958, 962 (W.D.

Mo. 2017) (citing *Sipe v. Workhorse Custom Chassis*, *LLC*, 572 F.3d 525, 530 (8th Cir. 2009)). Because the Court has concluded that Plaintiff did not state a claim for a breach of warranty under Missouri law, the Court will dismiss his claim under the Magnuson-Moss Warranty Act. *See Klausner*, 581 F. Supp. 3d at 551 n.6 (dismissing Magnuson-Moss Warranty claim since the plaintiff had not adequately pleaded a cause of action for breach of written or implied warranty); *Vogt v. K&B Auto Sales, LLC*, 4:22-cv-00385-SRC, 2022 WL 4103838, at *4–5 (E.D. Mo. Sept. 8, 2022) (same).

### c.  **Negligent Misrepresentation & Fraud**

To state a claim for negligent misrepresentation or fraud under Missouri law, a plaintiff must establish, among other things, that the speaker provided "false" information.  *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 131–32, 134 (Mo. banc 2010).  Because the Court has concluded that Plaintiff failed to state a claim under the MMPA, Plaintiff also has failed plausibly to allege Defendant provided any false information.  *See* Mo. Rev. Stat. § 407.020.1 (MMPA prohibiting the use of "fraud, false pretense, false promise, [and] misrepresentation").  Plaintiff's negligent misrepresentation and fraud claims therefore also fail. *Klausner*, 581 F. Supp. 3d at 549 (determining that dismissal was appropriate for negligent misrepresentation and fraud claims under New York law where the court already had rejected the plaintiff's argument that packaging was "materially misleading"); *cf.* Doc. [18] at 14 (Plaintiff arguing "his plausible MMPA claims support his negligent misrepresentation and fraud claims").

### d.  **Unjust Enrichment**

An essential element of unjust enrichment under Missouri law is that it would be unjust to allow the defendant to retain the benefit at issue.  *Roberts v. Roberts*, 580 S.W.3d 600, 605 (Mo. Ct. App. 2019).  There is nothing unjust in Defendant retaining the benefit of the purchase

- 15 -

price of the fruit snacks that Plaintiff purchased when the product conspicuously informed Plaintiff what he was purchasing.

### IV.   CONCLUSION

For these reasons, the Court will dismiss Plaintiff's Complaint in its entirety. Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, Doc. [11], is **GRANTED**.

A separate Order of Dismissal will accompany this Memorandum and Order.

Dated this 18th day of May 2023.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE